# ALBERT SCHULTZ

## v.

# PLANKINTON BANK.

*Mortgages—Notes Due at Different Times—Corporations—Contracts with—Practice—Evidence.*

1. Where a mortgage secures several notes due at different times, and there is no agreement to the contrary, the notes are entitled to payment, from the proceeds of the mortgaged property, in the order in which they become due and payable.

2. The rule of law is inflexible, that as between the parties to a written instrument, it can not be altered by parol proof, and this rule applies with the same force to exclude an alteration of the implication of law that arises upon a writing, as it does to a change of the written terms of the instrument.

3. It is for the court to draw inferences and conclusions, and then only from facts proved.

4. Proof by affidavit can only be made by a statement and verification of such facts as are requisite to establish the principal fact sought to be maintained.

5. A corporation can only make contracts through its duly authorized agents; an affidavit setting forth a contract with a corporation, should state with what officer thereof the same was made.

[Opinion filed May 5, 1891.]

IN ERROR to the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge, presiding.

In 1888 Henry Schultz was doing business in Milwaukee, Wisconsin, under the style of "The H. Schultz Cloak Manufacturing Company," and was indebted to the Plankinton Bank of Milwaukee. He desired to secure more money from the bank, and in order to do this, asked his son, Albert Schultz, to indorse his note to the bank for $2,000, who accordingly consented and indorsed the following note, at Chicago :

" MILWAUKEE, June 18, 1888.

" Ninety days after date I promise to pay to the order of Albert Schultz two thousand dollars, payable at the Plankinton Bank. Value received.

(Signed)    HENRY SCHULTZ.

(Indorsed)    ALBERT SCHULTZ."

The indebtedness owing the bank from Henry Schultz was upward of $7,500, all evidenced by the promissory note above, and four others.

In July, 1888, the bank requested Henry Schultz to give further security for this indebtedness, and to that end proposed that he execute to it a transfer of his stock in trade.

This Henry Schultz at first refused to do, insisting that before protecting or securing the bank it was his moral and legal duty to take care of the said accommodation note indorsed by his son. Thereupon, and in order to induce Henry Schultz to transfer his property to it, the bank agreed if he would make such transfer as requested, the bank would out of the proceeds of the property so to be transferred, first pay off and take up said accommodation note. Relying upon this agreement by the bank, Henry Schultz made a chattel mortgage of his stock to the bank, conditioned upon payment of $7,500 evidenced by five notes described therein as follows : " Note for $2,500 dated March 3, 1888, bearing interest at 7 per cent, due on demand. Note for $500, dated May 12, 1888, bearing interest at 7 per cent, due August 13, 1888. Note for $1,250, dated June 18, 1888, bearing interest at 7 per cent, due September 19, 1888. Note for $2,000, dated June 18, 1888, bearing interest at 7 per cent, due September 19, 1888 (being the note in suit). Note for $1,250, dated July 14, 1888, bearing interest at 7 per cent, due October 15th."

On July 19, 1888, the bank took possession under the mortgage of the stock of goods of Henry Schultz, and on August 3, 1888, sold it for $2,900 to A. M. Weber, Henry Schultz consenting thereto.

But the bank refused to pay said note of Albert Schultz out of the $2,900 derived from said sale, and brought the present action. The declaration contains the common counts, and also a count against the defendants as indorsers and one as guarantor. The defendant, Albert Schultz, filed several pleas presenting his right under the agreement of the bank with Henry Schultz to have the note paid first out of the proceeds of the sale of the stock of Henry Schultz, and also alleging payment.

On approach of the trial of the case he moved for a continuance on grounds of the absence of Henry and Anna Schultz, who if present would testify as follows, as stated in the affidavit for continuance:

"That said Henry Schultz was on or about the 19th day of July, 1888, indebted to said plaintiff in the sum of about seventy-five hundred dollars, including the note in controversy; that said amount was represented by five or more promissory notes of various sums; that at said time said Henry Schultz was engaged in said city of Milwaukee in the business of manufacturing and selling cloaks, and at said time said Henry Schultz was indebted to divers other parties in various other sums, aggregating several thousands of dollars; that at said time, said Henry Schultz was unable to promptly pay such indebtedness, which fact was well known to said plaintiff, and that, as a matter of fact, said Henry Schultz did not then and there have sufficient assets to pay in full all of his liabilities; that said plaintiff was aware of such fact at such time; that, for the purpose of protecting and securing itself, said plaintiff urged said Henry Schultz to make a transfer to said plaintiff substantially of all his property as security; that said Schultz refused to do so until urged and encouraged to do so as hereinafter set forth; that said Henry Schultz insisted to said plaintiff that it was his moral and legal duty to take care first of the accommodation paper so as aforesaid executed and delivered by this deponent, and which is the note in controversy, before protecting or securing the said plaintiff; that thereupon the plaintiff agreed with said Henry Schultz that if the said Henry Schultz would. make such transfer as requested by said plaintiff, said plaintiff would, out of the proceeds of the property so to be transferred, first pay off and take up the said accommodation note of this defendant, being the note in controversy; that said Schultz would not have made a transfer as thus requested to said plaintiff if such agreement had not been made, but relying upon such agreement, said Henry Schultz did make such transfer of all his property to said plaintiff upon the express understanding and agreement that said plaintiff would convert said property into

cash and out of the same first pay the said note of this defendant; that said Henry Schultz did make such transfer to the plaintiff relying upon such agreement; that such agreement was made at the time of such transfer between said Henry Schultz and plaintiff; that said plaintiff did convert said assets into cash and that they realized at least the sum of $2,900 above all expenses and costs; that said plaintiff utterly failed and refused, contrary to said agreement, to apply said $2,900 toward the payment of said note of this defendant, but, on the contrary, and in the teeth of said agreement, applied said moneys toward the payment of notes received by said plaintiff from said Henry Schultz other than the said note which is here in controversy; that if the plaintiff had applied said payment as it agreed to do, said note of this defendant would have been paid in full; that, as a matter of fact, said note was paid in full by said transfer, the only condition to said transfer being that the said property so to be transferred and converted by the plaintiff should realize enough to pay said note; that it did realize more than enough to pay said note, and that said note has been fully paid, both principal and interest." To avoid a continuance, the bank's attorneys admitted this affidavit as evidence. The case was then submitted to the court without a jury, and, after hearing the testimony, is found for plaintiff, holding the following propositions to be the law:

" 1st. The court finds that the matters and things alleged on the affidavit of Albert Schultz as to an agreement between Henry Schultz and the plaintiff for securing the indebtedness of Henry Schultz to the plaintiff, are in contravention of the written instrument, viz., the chattel mortgage made by Henry Schultz to the plaintiff, and therefore, and for that reason only, the court declines to consider such matters and things. And the court holds, as a matter of law, that the statements in said affidavit as to the terms of an agreement between Henry Schultz and the plaintiff for securing or payment of the indebtedness of Henry Schultz to the plaintiff, or any portion thereof, can not be considered in this case. (Exception.)

"2d. The court holds, as a matter of law, that the matters and things in the affidavit of Albert Schultz and the plaintiff for securing and paying the indebtedness of Henry Schultz to the plaintiff being rejected and not considered, the plaintiff is entitled to judgment for the amount of the note made by Henry Schultz sued upon in this case.     (Exception.)

"3d. The court holds, as a matter of law, that if the matters and things set forth in the affidavit of Albert Schultz, as to an agreement between Henry Schultz and the plaintiff for securing the indebtedness of Henry Schultz to the plaintiff, were proper to be considered in this case, such matters and things would constitute a good defense to this suit."

The motion for a new trial was overruled and judgment rendered in favor of plaintiff for $2,229.03, and error is prosecuted to review said judgment.

Messrs. KRAUS, MAYER & STEIN, for the plaintiff in error.

Messrs. MOSES & PAM, for defendant in error.

MORAN, P. J.   It is well settled in this State that where a mortgage secures several notes due at different times, and there is no special agreement to the contrary, the notes are entitled to payment from the proceeds of the mortgaged property in the order in which they become due and payable. Marseilles Manufacturing Company v. Rockford Plow Company, 26 Ill. App. 198, and cases there cited.

Assuming, for the purpose of inquiring as to the rule of law applicable to the question presented, that the affidavit states facts, admissible as evidence, as they are therein stated, to show that the bank made the agreement which it is contended it did make, with reference to the note indorsed by Henry Schultz, the question is, was such parol evidence admissible to vary the legal effect of the chattel mortgage?

Counsel for plaintiff in error have ingeniously suggested many theories and cited numerous authorities to support their contention that such evidence was admissible and competent. It would be a very great, and as we view the point, a profit-

Schultz v. Plankinton Bank.

less labor, for us to enter upon a discussion of the various grounds and attempt to distinguish the many cases on which counsel contend that the evidence was admissible. We think there are a few well settled principles of law, which, when considered, make it clear that the written chattel mortgage can not be varied in its terms or legal effect by parol evidence, where the question arises between parties and under circumstances as in this case.

It may be stated that the rule of law is inflexible, that as between the parties to a written instrument, it can not be altered by parol proof, and this rule applies with the same force to exclude an alteration of the implication of law that arises upon a writing, or in other words, its legal effect, as it does to a change of the written terms of the instrument. In Mason v. Burton, 54 Ill. 349, it was sought by one who had indorsed a promissory note, to prove a verbal agreement, made at the time of the indorsement, to the effect that he should not be responsible as indorser. The Supreme Court said: "This evidence was properly excluded. His assignment of the notes meant that, in certain contingencies defined by the statute, he would pay the notes, *and it meant this as fully as if this agreement had been written out in words. This was the legal effect of the assignment, and it can not be impaired by proof of a different parol agreement.*" By the Supreme Court of the United States it was said: "There is no rule of law better settled or more salutary in its application to contracts, than that which precludes the admission of parol evidence to contradict or substantially vary *the legal import* of a written agreement. Renner v. Bank of Columbia, 9 Wheat. 587; and see Martin v. Cole, 104 U. S. 30, where the cases are referred to, and those holding a contrary doctrine shown to have been overruled or discredited.

But it is argued this rule only applies between parties to the instrument and their privies, and appellant is neither party nor privy to the mortgage.

We can not assent to the proposition that appellant does not place himself in the relation of privy to the contract made between the bank and Henry Schultz.

He claims that for the consideration of the goods mortgaged, the bank made a promise for his benefit. He is seeking to make his defense to the note by insisting on the enforcement of the promise. If, in fact, such a promise was written in the mortgage, and the mortgage not under seal, appellant could enforce it in his own name. If, instead of an agreement to apply the proceeds of the mortgaged property to the discharge of the note, the promise written in the mortgage had been to pay appellant a specific sum of money, he could maintain an action for it in his own name. Moore v. House, 64 Ill. 162. The agreement or promise is one claimed to be made by the bank to Henry Schultz for the benefit of appellant. His right to maintain an action for the breach of such an agreement "does not rest upon the ground of any actual or supposed relationship between the parties as some of the earlier cases would seem to indicate, but upon the broader and more satisfactory basis that the law operating on the parties creates the duty, establishes a privity and implies the promise and obligation on which the action is founded." Brewer v. Dyer, 7 Cush., 337; Lawrence v. Fox, 20 N. Y. 268; Hoffman v. Schwabe, 33 Barb. 194.

The evidence of such a promise is to be found in the agreement between the original parties, and that agreement must be proved in accordance with the rules of evidence. If it rested in parol, then it may be established by parol evidence; if it was reduced to writing, then the writing is the best evidence and such writing can not be varied or its legal effect altered by parol. Schemerhorn v. Vanderheyden, 1 Johns. 139.

No course of reasoning can take appellant's claim in this case out of the operation of this rule. His only right is based on the contract, which he says was made by the Plankinton Bank with Henry Schultz in consideration of the mortgage. He introduces the contract in evidence, and claims under it. The parties to that mortgage have made it "the authentic memorial" of the agreement, and for the parties to it and all who claim under it, it speaks the whole truth upon the subject-matter. The principle that one who claims under a con-

·tract is bound by this rule of evidence is recognized in many of the cases cited by appellant. Talbot v. Wilkins, 31 Ark. 420; Reynolds v. Magnus, 2 Ired. 30; Cunningham v. Milner, 56 Ala. 525; Manufacturing Company v. Wire Fence Co., 109 Ill. 79.

The action of the court in excluding the statements contained in the affidavit, is to be sustained on another ground. If the reason given by the court for excluding the affidavit was a bad one, and we have seen it was not, still the action of the court in excluding it was correct for the reason that there is no statement of facts in the affidavit competent as evidence.

The material part of the affidavit is "that thereupon the plaintiff agreed with said Henry Schultz that if the said Henry Schultz would make such transfer as requested by said plaintiff, said plaintiff would, out of the proceeds of the property so to be transferred, first pay off and take up said accommodation note of this defendant, being the note in controversy; that said Schultz would not have made a transfer as thus requested, to said plaintiff, if such agreement had not been made, but relying upon such agreement said Henry Schultz did make such transfer of all his property to said plaintiff, upon the express understanding and agreement with said plaintiff, that said plaintiff would convert said property into cash, and out of the same first pay the said note of this defendant."

It will be observed that the affidavit states the conclusion that the plaintiff agreed, etc.; no conversation or words showing an agreement are set out, no statement of facts from which such agreement can be inferred; an affidavit should state facts, and not conclusions, which are merely the affiant's opinion. It is for the court to draw inferences and conclusions, and then only from facts proved. Waarich v. Winter, 33 Ill. App. 36.

"Proof is the perfection of evidence, for without evidence there is no proof, although there may be evidence which does not amount to proof. Proof by affidavit can only be made by a statement and verification of such facts as are requisite to establish the principal fact sought to be maintained." Town of Duanesburg v. Jenkins, 40 Barb. 574.

Here the principal fact sought to be maintained was the agreement. No issue can be taken on a conclusion, and in this affidavit there is nothing more than the bald conclusion.

In Baker v. Akerman, 77 Geo. 89, the affiant alleged that he was the surety for his co-defendant, and this fact was known to plaintiff, and that plaintiff "made a contract with the principal defendant by which, for a valuable consideration, she agreed to indulge him," etc. The court in discussing the affidavit said: "There is no fact set out in this affidavit upon which issue can be taken, or on which perjury could be assigned in the event it should turn out to be false. The statements are only conclusions, which it would be the province of the court, and not of the affiant, to draw from facts properly stated. * * * Such general averments amount to nothing. They are mere *brutum fulmen* and can not be passed upon by the court." See also Gould v. Gage, 118 Penn. St. 559; Erie City v. Butler, 120 Penn. St. 374.

But the affidavit is not only faulty in not stating facts showing an agreement. It fails to show with whom the agreement was made. The plaintiff is a corporation and can only make agreements by its duly authorized agents. With what agent or officer was this alleged agreement made? It is uncertain and evasive to say it was made with the plaintiff. There could be no agreement with the plaintiff, personally; then with whom was the agreement? How could the plaintiff disprove the allegations of this affidavit if it had been required to do so? If the witness were on the stand, he would not be allowed to state that he made an agreement with the plaintiff. Such a statement would be incompetent, and so it is incompetent when offered in an affidavit.

"A corporation is a purely artificial body, and can act only through agents; hence, unless the receipting agent is set forth to whom the money has been paid, and the special circumstances attending such payment, the defendant might just as well swear to a plea of payment with lessee and offer that as an affidavit of defense." McCracken v. First Pres. Con., etc., 111 Penn. St. 109.

The affidavit, in the terms in which it was drawn, was not

competent evidence to prove any agreement with the plaint-
iff, and therefore appellant has no ground on which to com-
plain of its exclusion.

There is no error, and the judgment must be affirmed.

*Judgment affirmed.*

Waterman, J., having decided this case in the Circuit
Court, takes no part in its determination in this court.